1

2

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
TELEPHONE (602) 396-4890
FACSIMILE (602) 954-5245
fpetti@pettibriones.com
——————————

3

4

5

Frederick R. Petti #011668
Patricia Lane Briones #026701
Joseph T. Hourigan #027516

6

7

T. Gregory Jackson (TX Bar No. 24004718)
John M. Farrell (TX Bar No. 24059735)
*(Applications for Pro Hac Vice Forthcoming)*
ARCADI JACKSON, LLP
2911 Turtle Creek Boulevard, Suite 800
Dallas, TX  75219
Telephone (214) 865-6458
Facsimile (214) 865-6522

8

9

10

11

Attorneys for Plaintiff
GlobalTranz Enterprises LLC

12

13

IN THE UNITED STATES DISTRICT COURT

14

FOR THE DISTRICT OF ARIZONA

15

| GLOBALTRANZ ENTERPRISES, LLC, | Case No. |
|---|---|
| Plaintiff, | **PLAINTIFF GLOBALTRANZ ENTERPRISES LLC'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | |
| PINNACLE LOGISTICS GROUP, LLC, an Arizona corporation; NICHOLAS JARVIS and JANE DOE JARVIS, husband and wife; TYLER HARPER and JANE DOE HARPER, husband and wife; VINCENT LAMIA and JANE DOE LAMIA, husband and wife; MEGAN MACDONALD and JOHN DOE MACDONALD, wife and husband, | |
| Defendants. | |

16

17

18

19

20

21

22

23

24

25

Plaintiff GlobalTranz Enterprises, LLC ("GTZ") hereby files this *Verified Complaint for Injunctive Relief and Damages* against Defendants Pinnacle Logistics Group, LLC

26

27

("Pinnacle"), Nicholas Jarvis ("Jarvis"), Tyler Harper ("Harper"), Vincent Lamia ("Lamia") and Megan MacDonald ("MacDonald") ("Jarvis, Harper, Lamia, and MacDonald will be collectively referred to herein as the ("Individual Defendants") (the Individual Defendants, together with Pinnacle, will be referred to herein as "Defendants") and respectfully states as follows:

## I. PRELIMINARY STATEMENT

GTZ brings this action to prevent Defendants from unfairly competing against GTZ by soliciting customers and providing services through Pinnacle using confidential and trade secret information they misappropriated from their former employer, Volition Logistics, LLC ("Volition"), just prior to GTZ's acquisition of Volition.

On January 26, 2022, GTZ acquired substantially all of the assets of Volition, including the assignment of all rights, title, and interest in all assets used in or relating to Volition's operations logistic business and all assets listed in Schedule 1.1(a) of the Asset Purchase Agreement (the "Asset Sale"). As part of the Asset Sale, Volition and GTZ expected that the employees of Volition would accept offers of employment with GTZ in similar roles under similar terms and conditions. GTZ extended offer letters to Jarvis, Lamia, MacDonald, and Harper in anticipation of their continued employment after the completion of the Asset Sale. However, the Individual Defendants had a different plan. The Individual Defendants had apparently been preparing to compete with Volition/GTZ by forming their new entity Pinnacle. To jump start their operations, the Individual Defendants used the distraction of the Asset Sale, and their continuing access to Volition's sensitive confidential and trade secret business information, to misappropriate the information they would need to immediately begin poaching clients and operating Pinnacle following the Asset Sale. Since January 26, 2022, the Individual Defendants have used Volition's (now GTZ's) confidential and trade secret information to unfairly compete with GTZ and trade upon Volition's (now

GTZ's) goodwill developed over the years to confuse customers into diverting their business to Pinnacle.

GTZ seeks damages against Defendants to compensate GTZ for the injuries they have caused, and temporary and permanent injunctive relief to prevent further irreparable injury.

## II.  THE PARTIES

1.      Plaintiff GlobalTranz Enterprises, LLC is a domestic limited liability company organized and existing under the laws of the state of Arizona with its principal place of business at 7350 N. Dobson Road, Suite 130, Scottsdale, Arizona 85256.  GTZ is authorized to do business in Arizona.

2.      Defendant Pinnacle Logistics Group, LLC is a domestic limited liability company organized and existing under the laws of the state of Arizona with its principal place of business at 9531 S. 13th Way, Phoenix, Arizona 85042.  Pinnacle can be served through its registered agent Registered Agents, Inc., 1846 E. Innovation Park Drive, Suite 100, Oro Valley, Arizona 75755.

3.      Defendant Nicholas Jarvis is a natural person who, upon information and belief, resides and may be served at his home at 9531 S. 13th Way, Phoenix, Arizona 85042.  To the extent Jarvis is married, the true name of his spouse is unknown at the present time and his spouse is therefore being sued under the fictitious name Jane Doe Jarvis.  At all times pertinent to this Complaint, Jarvis was acting for and on behalf of his marital community.  By virtue thereof, the marital community of Jane Doe Jarvis is liable for the acts hereinafter mentioned of Jarvis.

4.      Defendant Megan MacDonald is a natural person who, upon information and belief, resides and may be served at her home at 5611 S. 32nd St., Apt 338, Phoenix, Arizona 85040.  To the extent MacDonald is married, the true name of her spouse is unknown at the present time and his spouse is therefore being sued under the fictitious name John Doe MacDonald.  At all times pertinent to this Complaint, MacDonald was acting for and on

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

3

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

behalf of her marital community.  By virtue thereof, the marital community of John Doe MacDonald is liable for the acts hereinafter mentioned of MacDonald.

5.     Defendant Vincent Lamia is a natural person who, upon information and belief, resides and may be served at his home at 10323 E. Becker Ln., Scottsdale, Arizona 85260. To the extent Lamia is married, the true name of his spouse is unknown at the present time and his spouse is therefore being sued under the fictitious name Jane Doe Lamia.  At all times pertinent to this Complaint, Lamia was acting for and on behalf of his marital community.  By virtue thereof, the marital community of Jane Doe Lamia is liable for the acts hereinafter mentioned of Lamia.

6.     Defendant Tyler Harper is a natural person who, upon information and belief, resides and may be served at his home at 4363 W. Escuda Dr., Glendale, Arizona 85308.  To the extent Harper is married, the true name of his spouse is unknown at the present time and his spouse is therefore being sued under the fictitious name Jane Doe Harper.  At all times pertinent to this Complaint, Harper was acting for and on behalf of his marital community. By virtue thereof, the marital community of Jane Doe Harper is liable for the acts hereinafter mentioned of Harper.

### III.  JURISDICITION AND VENUE

7.     This Court has original jurisdiction over GTZ's federal law claims against Defendants under 28 U.S.C. § 1331 and supplemental jurisdiction over GTZ's claims under Arizona law pursuant to 28 U.S.C. § 1367.

8.     Each of the Individual Defendants are subject to the personal jurisdiction of this Court as they each reside in, and are citizens of, the State of Arizona.  Additionally, the Individual Defendants previously worked for Volition in its Phoenix, Arizona office.

9.     Defendant Pinnacle is subject to personal jurisdiction of this Court.  Pinnacle is organized, headquartered, and has its principal place of business in the State of Arizona.

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

Additionally, Pinnacle has employees in Arizona, including, at least, the Individual Defendants, and Pinnacle is conducting business in the State of Arizona.

10.    Each Defendant has sufficient minimum contacts with the State of Arizona to satisfy due process and/or requirements of the Arizona Long Arm Statute, if applicable, and each Defendant has purposefully availed himself/herself/itself of the benefits and burdens of Arizona law and/or the privilege of conducting business in Arizona.

11.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) as the district in which the defendants reside and a district in which a substantial part of the events and omissions giving rise to the claims occurred.

## IV.  FACTUAL BACKGROUND

### A.    *GTZ's Operations and Efforts to Protect Confidential Information*

12.    GTZ is a logistics provider offering customers access to industry-leading small parcel, truckload, and less-than-truckload shipping solutions around the world.  In addition to shipping services that GTZ provides to its own clients, GTZ has various partnerships with other logistics companies which take advantage of GTZ's systems and operational capabilities to provide shipping services to the partner company's clients.  These partnerships are referred to as agency relationships.  Prior to the Asset Sale, GTZ and Volition maintained an agency relationship.

13.    Volition, like GTZ, was a logistics broker that specialized in freight management and providing companies with small parcel, truckload, and less-than-truckload shipping solutions. Volition operated within a wide range of industries including, but not limited to, automotive manufacturing, retail, consumer, furniture, home furnishings, and food and beverage.

14.    Volition employed more than 40 people out of its headquarters in Clinton Township, Michigan and offices in Phoenix, Arizona, and Monterey, Mexico.

15.     Volition's agency relationship with GTZ allowed Volition to utilize GTZ's platform for back-office support, including services such as invoicing, collections, advance payments to carriers on credit, and other similar services.

16.     As a normal part of its operations, Volition created and maintained numerous items that constituted the company's proprietary information and trade secrets (the "Confidential Information").[1] These included, but were not limited to: 1) information regarding current product/service offerings; 2) pricing and discount information; 3) sales and marketing plans; 4) carrier/vendor lists and contract information; 5) carrier/vendor capabilities and information regarding its business relationships with carrier/vendors; 6) negotiation strategies; 7) lead lists and contact information; 8) customer/client lists and contact information; 9) customer/client contracts; 10) other customer/client information, including shipping histories, needs, and preferences; 11) revenue, profit, and cost information; 12) business plans and development strategies; 13) analytics and reporting information; 14) information regarding future business opportunities and product/service offerings; 15) sales/customer relations training/mentorship programs; and 16) proprietary tools developed to assist Volition in booking freight for its customers.

17.     Volition developed the Confidential Information through extensive time, labor, skill, and money.  This Confidential Information is not available publicly and would require substantial amounts of time and effort to develop independently or reverse engineer.  Indeed, a significant portion of the Confidential Information was gathered over the course of long-standing relationships with carriers and customers and would be impossible to develop

---

[1] For the purposes of the Complaint, GTZ will refer to its confidential and proprietary business and trade secret information as "Confidential Information."  GTZ intends this defined term "Confidential Information" to be coextensive with the defined term "Confidential Information" from the Employee Non-Disclosure Agreement Volition entered into with its employees.  Such confidentiality agreements, as well as the definition of the term Confidential Information as used in the agreements, are discussed herein in more detail.

independently or to reverse engineer without the benefit of Volition's experience with such customers and carriers.

18.     Such information would be incredibly valuable to a competitor and access to Volition's information would provide an unfair competitive advantage to competitors, especially competitors attempting to enter the competitive space with newly formed entities. More specifically, information regarding customers would allow a competitor to immediately identify potential revenue targets, develop a solicitation plan for the customers, divert customer business, set pricing/undercut Volition pricing, and immediately address needs in accordance with the customer's specific preferences. Information regarding carriers would allow a competitor to immediately identify carriers with the capabilities to move freight for customers and match carriers with customer needs (such as type of trailer needed, licenses for hazardous materials, or specific delivery routes, etc.). Volition's proprietary tools would allow a competitor to immediately begin using such tools to provide services, including booking freight for customers, allowing customers to manage their shipping needs and preferences, and matching customers with carriers.

19.     Volition specifically protected its Confidential Information through a mix of physical, personal, and electronic security measures.

20.     From a physical standpoint, Volition maintained its Confidential Information at its headquarters and local offices in buildings that have restricted public access. Employees were required to use the appropriate physical keys or keycards to access the offices, and each of the offices had either internal and/or external security cameras to record various areas in and around the facility.

21.     From a personnel standpoint, Volition ensured that employees were well aware of their obligations to maintain the confidentiality of the Confidential Information. In connection with their hire, Volition required employees to sign non-disclosure agreements. These agreements contain specific provisions regarding Confidential Information and the duty

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

of all employees to protect it both during and following their employment.  Volition also advised its employees of their confidentiality obligations in the Employee Handbook[2] which sets forth employee policies regarding the use and disclosure of Confidential Information.[3] The Employee Handbook further contains policies regarding the physical security of the space.[4]  Employees were required to acknowledge that they received and would abide by the Employee Handbook.[5]  Upon separation from employment, Volition required employees to return all company property in their possession, including all electronic and physical copies of any documents containing Volition's Confidential Information.[6]  Separating employees were additionally given specific lists of property and information that Volition believed to be in their possession and must be returned.  Volition ensured that departing employees complied with these requests.

22.    From an electronic standpoint, Volition invested heavily in information security software to protect Confidential Information in electronic format from both internal misuse and external misappropriation.  Volition issued each employee a computer and required that

[2] A true and correct copy of the relevant sections of the Employee Handbook are attached hereto as Exhibit B.

[3] Volition's policies regarding Confidential Information are located in various parts of the Employee Handbook.  In the section titled "Company Property," Volition advised employees that "[f]iles or programs stored on company computers may not be copied for personal use." Exhibit B, § 3.4.  In the section titled "Discipline Policy," Volition lists actions which subject employees to discipline and/or termination including, but not limited to: 1) unauthorized use of company property, equipment, devices, or assets; 2) removing company property without prior authorization or disseminating company information without authorization; and 3) disclosing confidential or proprietary company information without permission.  *See* Exhibit B, § 8.1.

[4] Volition required that its employees guard their company property and required that visitors be accompanied by an escort at all times.  *See* Exhibit B, § 9.2.

[5] True and correct copies of the Acknowledgement of Receipt for Employee Handbook executed by Jarvis, Lamia, Harper, and MacDonald are attached hereto as Exhibit C1 through C4, respectively.

[6] According to the Employee Handbook, upon voluntary or involuntary termination of employment, employees are required to "return all files, documents, equipment, keys, access cards, software, or other property belonging to the company that are in the employee's possession, custody or control, and turn in all passwords to his/her supervisor."  *See* Exhibit B, § 8.3.

such computers be secured with passwords that meet appropriate strength parameters. Employee access to certain internal systems containing Confidential Information was limited and also restricted using passwords. Volition instructed employees not to share their passwords with other employees or third parties. They also instructed employees not to write down system access credentials, store them electronically, or leave them unprotected in and around workstations. Volition maintained policies regarding its electronic systems designed to prevent attacks from outside sources attempting to gain access to the systems and designed to prevent Confidential Information from being transferred to unsecured systems.[7] Further, Volition employees did not have access to all of Volition's Confidential Information. Volition restricted access to certain Confidential Information to those employees with the business need for such information. Some documents also have additional password protections built into the actual document as well.

23.    Employees who did not comply with physical, personal, and electronic safeguards for their Confidential Information were subject to discipline, up to and including termination.

24.    Protection of the Confidential Information was especially important given the use competitors could make of such information. Competitors armed with Volition's Confidential Information could irreparably damage Volition's competitive position in the marketplace, destroy the secrecy of Volition's trade secrets, destroy the value of Volition's access to and exclusive use of its trade secrets, confuse Volition's customers and carriers, strain Volition's relationships with its customers and carriers, cause Volition to lose business and goodwill, and cause Volition to lose the benefit of its bargains with its employees.

_____

[7] *See* Exhibit B, § 3.4 (instructing employees that company telephone, computers, and software are not for private use and such devices should only be used for company business, and further prohibiting employees from downloading any "pirated" software or programs or installing new software without prior approval).

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

25.     As part of the Asset Sale, GTZ acquired Volition's Confidential Information. GTZ has maintained the efforts of Volition to protect the Volition (now GTZ) Confidential Information and is currently in the process of incorporating the Confidential Information within its similarly protected systems and subjecting it to its policies designed to protect confidential information.

**B.      *The Individual Defendants' Employment with Volition***

26.     Nicholas Jarvis began his employment with Volition on September 13, 2016, as a Capacity Manager and was later promoted to FTL (Full Truck Load) and Branch Manager at the Phoenix location.  Jarvis worked in direct partnership with the Operation and Capacity teams to maintain open lines of communication with clients and carriers to ensure the timely completion of service for all shipments.  He was responsible for facilitating shipment and brokering deals for load placement with available carriers.  He also supervised all tracking employees, including Virtual Assistants, and oversaw the brokerage team.  Upon being promoted, Jarvis received an increase in compensation, monthly bonuses based on his team's revenue, and access to additional Confidential Information as necessary to fulfill his duties as FTL and Branch Manager.

27.     Tyler Harper began his employment with Volition on October 7, 2016, as a Capacity Manager.  He was later promoted to an Assistant FTL Manager and received an enhanced compensation package which included a monthly bonus based on his team's revenue.  As an Assistant FTL Manager, Harper worked in direct partnership with the Operation and Capacity teams to maintain open lines of communication with clients and carriers to ensure the timely completion of service for all shipments. Harper received increased access to Confidential Information as necessary to perform his duties as Assistant FTL Manager.

28.     Vincent Lamia began his employment with Volition on April 1, 2019.  At the time of the Asset Sale, he was employed as an Account Executive.  An Account Executive is

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

a sales representative and relationship manager who is responsible for identifying and obtaining new clients, maintaining client relationships, and expanding business relationships with current clients through continuous communication and logistic reports. During his employment, Lamia had extensive access to Volition's most sensitive and confidential information regarding its customers, their current and historical needs/preferences, purchasing patterns, and pricing arrangements.

29.    Megan MacDonald began her employment with Volition on September 8, 2020, as a Tracking Coordinator. MacDonald was later promoted to Capacity Manager and then again to Tracking Supervisor for Volition's offshore group. As a Tracking Supervisor, MacDonald worked in direct partnership with operations to track and trace shipments, ensured timely pick-up and delivery of shipments, assisted in the collection of appropriate documents for carriers, and supervised and evaluated the track and trace team members. She too received increased compensation and greater access to Confidential Information commensurate with her promotions.

30.    Volition provided each of the Individual Defendants with a generous compensation package that included a base salary, commissions, and bonuses.

31.    As it did with all its employees, Volition required each of the Individual Defendants to sign an Employee Non-Disclosure Agreement ("NDA")[8] as a condition of their employment. The Individual Defendants executed separate NDAs containing the same terms between January 3rd and January 7th of 2020.

32.    Volition's NDA contains confidentiality obligations applicable both during and after the term of an employee's employment with Volition. Relevant to this dispute are the provisions governing the Confidential Information. The NDA defines Confidential Information as:

---

[8]  True and correct copies of the Employee Non-Disclosure Agreements executed by Jarvis, Lamia, Harper, and MacDonald are attached hereto as Exhibits A1 through A4.

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

"[A]ny material, knowledge, information and data (verbal, electronic, written or any other form) concerning Volition or its businesses not generally known to the public consisting of, but not limited to, inventions, discoveries, plans concepts, designs, blueprints, drawings, models, devices, equipment, apparatus, products, prototypes, formulae, algorithms, techniques, research projects, computer programs, software, firmware, hardware, business, client lists, potential clients for development and all marketing plans, merchandising systems, financial pricing data, information concerning investors, customers, suppliers, consultants and employees, and in any other concepts, ideas or information involving or related to the business which, if misused or disclosed, could adversely affect Volition's business." *See* Exhibit A1-A4, Article II, ¶ A.

33.    The NDA contains a promise by the Individual Defendants to protect Confidential Information provided to them during their employment.  More specifically, the NDA contains the following provisions:

"Employee agrees not to use or disclose Confidential Information for their own personal benefit or the benefit of another person, corporation, or entity other than [Volition] during the employee's employment with [Volition] and for two years thereafter." *See* Exhibit A1-A4, Article II, ¶ C.

and

"Employee[s] shall limit access to Confidential Information to individuals on a strictly need-to-know basis, involving only those who are carrying out duties related to Volition and its business. Individuals under the employee's command (affiliate, agents, consultants, representative, and other employees) are bound by and shall comply with the terms of this Agreement." *See* Exhibit A1-A4, Article II, ¶ D.

34.    The NDA specifically contemplates the fact that violations of the NDA would be especially harmful to Volition.  Therefore, the Individual Defendants each specifically agreed that violations of the NDA "would cause Volition irreparable harm" and agreed that Volition had the right to seek "injunctive or equitable relief" to remedy such violations.  *See* Exhibit A1-A4, Article IX, ¶ C.

35.    Based on the Individual Defendants' various positions, they each had access to sensitive Confidential Information including, but not limited to, details of Volition's

relationship and pricing contracts; lead/customer lists and contact information, customer

revenue, margin, costs, and pricing information; sales and marketing strategies, business

development plans; customer history/need/preference information; information regarding

Volition's carrier network relationships as necessary to carry out their specific

responsibilities; and Volition's proprietary tools.

36.     Additionally, Jarvis was integral to the development and design of Volition's

proprietary interactive logistics tools that allowed customers to take full advantage of the

most efficient, convenient, and cost-effective shipment offerings of Volition ("Interactive

Spreadsheets"). The Interactive Spreadsheets are customer specific GoogleSheets hosted on

the Volition domain wherein employees, customers, shippers, and carriers input information

critical to servicing the customer's shipments.  In some instances, customers and shippers

enter full details of their shipments for Volition to review and enter into the command center

which would automate notifications and updates.  On the Volition side, updates to the

Interactive Sheets allowed for real-time tracking and shipment updates for the customer.

Volition also used the Interactive Spreadsheets to create rate and lane sheets for customers

which includes proprietary information including customer name and details, pick-up and

delivery locations and the rate Volition charged for same.

37.     Volition also utilized an automated program called Smartsheets ("Smartsheets")

(together with the Interactive Spreadsheets, the "Proprietary Logistics Tools") containing

Confidential Information regarding carrier relationships and customer/carrier preferences used

to automate the process of detention requests and utilize carrier's capacity and non-transit

time to create efficiency for both customers and carriers.  Smartsheet Inc. is a third-party

subscription-based service that allowed Volition to feed data into the system to generate

unique customer reports based on Volition's proprietary programming and coding.  Volition

additionally used Smartsheets for a variety of functions including, but not limited to,

internally tracking carrier relations (contact information, lanes they run, rates offered,

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

materials they prefer to haul) and preparing summaries of loads booked based on full details of every load managed by Volition in GTZ's command center.

38.    Not only did Jarvis work closely with programmers hired by Volition to develop the proprietary coding that comprised the Interactive Spreadsheets and Smartsheets, but he was responsible for the development and customization of the Proprietary Logistics Tools to meet the individual needs of each of Volition's customers, giving him nearly unfettered access to Volition's entire customer base and its Confidential Information.[9]

39.    The Interactive Spreadsheets and Smartsheets were created for customers with enough volume and shipping frequency to benefit the most from the use of the Proprietary Logistics Tools.  The Interactive Spreadsheets include information related to the customer's order and delivery details, load sizes, routes, and extensive pricing information. The Interactive Spreadsheets also include relevant proprietary information developed over time through Volition's relationships with customers and carriers which is used to reduce the number of loads and trips, and thus, allow for Volition to have a fair and competitive pricing advantage.  These Interactive Spreadsheets were provided to the specific client for which it was created to allow for real-time communication necessary to provide effective services to the clients. Volition utilized the Smartsheets software as an internal interactive tool to automate the process of a driver's detention requests, making route logistics more efficient for the customers and the carriers.  Lamia provided Jarvis with the specific customer needs from which Jarvis would create an individualized Smartsheet for each customer.  Each Smartsheet form pulled Confidential Information from Volition's various data centers to provide live updates relating to customer's loads, preferences, priorities, availability, etc.  This allowed for automatic processing, increased efficiency for customers, and decreased idle time for carriers.

---

[9] By signing the NDA, Jarvis agreed that "[i]nventions constructed while under [Volition's] employment are the sole property of [Volition]…" *See* Article III, ¶ B Ownership of Inventions.

40.    Jarvis developed the coding necessary to create these Proprietary Logistics Tools in his capacity as Volition's employee, using Volition's money, resources, and Confidential Information.  The Proprietary Logistics Tools are therefore the sole property of GTZ.  These Proprietary Logistics tools provided GTZ with a fair advantage in the market by streamlining product routing and delivery, as well as providing customers with real-time updates on load statuses, thus increasing customer cost effectiveness and providing GTZ a competitive advantage in determining customer price points.

C.    *The Asset Sale*

41.    As discussed above, prior to the asset sale, Volition and GTZ partnered to provide shipping services to Volition's customers.  Over the course of this relationship, Volition and GTZ discussed GTZ potentially acquiring Volition.  Such negotiations ultimately culminated in the Asset Sale.

42.    In or about November of 2021, GTZ and Volition agreed in principle to GTZ purchasing nearly all of Volition's assets, and the right, title, and interest in all contracts, property, and systems necessary to operate Volition's business, subject to stated exclusions. As such, Volition announced the acquisition to its employees indicating that all employees would be retained after the sale as employees of GTZ.

43.    The final negotiations and logistics of the Asset Sale were completed in January 2022.  On January 26, 2022, the Asset Sale officially closed.  In connection with the closing, GTZ made offers of employment to all of Volition's employees, including the Individual Defendants, and retained the compensation structures and packages that Volition employees maintained during their employment with Volition.

44.    Both GTZ and Volition were under the belief that the Individual Defendants would join GTZ on January 26; however, they each rejected the offers made by GTZ.

45.    Each of the Individual Defendants separated from Volition on January 26, 2022. Jarvis, Harper, and MacDonald left their computers at Volition.  Lamia, however, retained his

1   laptop until January 27, 2022, despite being instructed to leave his computer at Volition's

2   offices in Phoenix following his decision to reject the GTZ offer.[10]  Although Volition/GTZ

3   took steps to immediately restrict the Individual Defendants' access to the Volition systems,

4   Lamia retained access to any files stored locally on his laptop until its return on January 27.

5   **D.**   ***The Individual Defendants Found Pinnacle, Partner with Priority1, and Begin Soliciting Volition Clients***

6   46.   Unbeknownst to GTZ, the Individual Defendants had planned to leave Volition

7   in advance of their decision to reject GTZ's offer of employment, as evidenced by their

8   incorporation of Pinnacle Logistics Group, LLC on January 20, 2022.

9   47.   Less than one week following the Individual Defendants' decision to reject

10  GTZ's offers of employment, Pinnacle was a fully operational entity that partnered with

11  Priority1 Inc. ("Priority1") (similar to the manner that Volition had previously partnered with

12  GTZ prior to the acquisition).  Priority1 is a competitor to GTZ, and it appears that Pinnacle

13  has set itself up to use Priority1 to directly compete with GTZ.

14  48.   GTZ discovered the existence of Pinnacle when it inadvertently received

15  multiple emails from various customers which showed that Pinnacle was inappropriately

16  soliciting GTZ's customers.

17  49.   On February 3, 2022, the Logistics Coordinator at Client A[11] mistakenly sent an

18  email to Jarvis's GTZ email address (nbjarvis@globaltranz.com)[12] which disclosed that the

19

20  _____

21  [10] According to the Employee Handbook, upon voluntary or involuntary termination of employment, employees are required to "return all files, documents, equipment, keys, access cards, software, or other property belonging to the company that are in the employee's possession, custody or control, and turn in all passwords to his/her supervisor." *See* Exhibit B, § 8.3.

22

23  [11] For purposes of protecting its relationships with its clients, GTZ will refer to the clients using generalized terms and redact the exhibits to avoid publicly disclosing the identity of the clients and its personnel.  GTZ can make unredacted versions of the exhibits available to the Court for *in camera* inspection upon request and/or file sealed versions of the exhibits.

24

25  [12] Due to the agency relationship between Volition and GTZ, the Individual Defendants were provided with email accounts for both Volition and GTZ even though the Individual Defendants were not GTZ employees.

26

27

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

Individual Defendants were now operating under the name Pinnacle Logistics as an agent of Priority1, and that Pinnacle, and specifically Jarvis, would be Client A's new broker. *See* Ex. D.[13]

50.    On February 4, 2022, Client B, another Volition client, mistakenly sent an email to Lamia's Volition email address (vlamia@volitionlogistics.com) detailing its intention to divert 26 loads from GTZ to Pinnacle. *See* Ex. E.[14]

51.    Again, on February 9, 2022, Client C, another Volition client, mistakenly sent an email to Harper's GTZ email address (t.harper@globaltranz.com) which provided load details and Harper's assurance that he is now personally handling all of Client C's loads. *See* Ex. F.[15]

52.    On February 9, 2022, Client D, another Volition customer, mistakenly sent an email to Harper's GTZ email related to loads that Pinnacle handled on or before February 8, 2022. *See* Ex. G.[16]

53.    Not only were Pinnacle and the Individual Defendants soliciting Volition's (now GTZ's) customers, but upon information and belief, they were utilizing the Proprietary Logistics Tools developed by Volition to seamlessly divert customers from Volition to Pinnacle.

54.    On February 11, 2022, a logistics specialist at Client D mistakenly sent an email to Harper's GTZ email advising that she was removing an order that was "1 carton, and 11

---

[13] Attached as Exhibit D is a true and correct copy of the email sent from Client A to Nicholas Jarvis at nbjarvis@globaltranz.com.

[14] Attached as Exhibit E is a true and correct copy of the email sent from Client B to Vincent Lamia at vlamia@volitionslogistics.com.

[15] Attached as Exhibit F is a true and correct copy of the email sent from Client C to Tyler Harper at t.harper@globaltranz.com.

[16] Attached as Exhibit G is a true and correct copy of the email sent from Client D to Tyler Harper at T. Harper@globaltranz.com.

cubes" from the "spreadsheet." *See* Ex. H.[17]  As detailed herein, the Interactive Spreadsheets developed by Volition included a metric which tracks the "order pieces" and "order cube" along with several other metrics which help Volition and the customer track load details, pricing, and profit.  Client D was one of Lamia's most profitable clients and relied heavily on the use of the Proprietary Logistics Tools.

**E.    *GTZ Takes Steps to Protect its Confidential Information and Customer Relationships/Goodwill***

55.    GTZ immediately took steps to protect its Confidential Information from further use and disclosure after determining the Individual Defendants were using Pinnacle to compete with GTZ with respect to the exact same customers the Individual Defendants had serviced while employees of Volition.

56.    GTZ engaged counsel and a forensic computer expert to investigate the Individual Defendants' misconduct and take appropriate action.

57.    On February 10, 2022, GTZ sent a letter to Pinnacle demanding that Pinnacle return GTZ's confidential information, cease improperly interfering with GTZ's customer relationships, and preserve all information that may be relevant to GTZ's legal claims against Defendants.

58.    On February 11, 2022, GTZ additionally reached out to Priority1 requesting that it preserve relevant evidence and informing it that GTZ was investigating the conduct of Defendants.

59.    On February 15, 2022, Defendants responded to GTZ's February 10 letter stating that they had not misappropriated and were not using any information from Volition. As GTZ would later determine through its continued investigation, this representation appears to be demonstrably false.

---

[17] Attached as Exhibit H is a true and correct copy of the email sent from Client D to Tyler Harper at t.harper@globaltranz.com.

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

*F.    GTZ Uncovers Evidence of Defendants Wrongdoing*

60.    In addition to sending letters to Defendants, GTZ engaged a computer forensic expert to collect and analyze the Individual Defendants' Volition computers, email accounts, chat histories, and cloud accounts to test the veracity of the Defendants' statements that they had not misappropriated Volition's Confidential Information in connection with their preparations for competing as Pinnacle.

61.    This forensic investigation strongly suggests that the Individual Defendants misappropriated and are using Volition's Confidential Information to aid their customer solicitations and business operations at Pinnacle.

**1.    Nick Jarvis**

62.    Most of the suspicious activity was found on the computer system belonging to Jarvis.

63.    The forensic investigation determined that, in the weeks leading up to his resignation, Jarvis used two removable storage devices on his Volition computer, neither of which appeared to be used in the normal course and scope of Jarvis' employment with Volition and neither of which was returned to Volition upon Jarvis' resignation.

64.    The first is a Toshiba device (the "Toshiba USB Drive"). Jarvis first connected this device to his Volition computer on January 12, 2022 (just 2 weeks prior to his resignation) and last removed it on January 13, 2022. Although it is not possible to determine what exactly is on the Toshiba USB Drive without possession of the device, Jarvis accessed files and folders on the device while it was inserted into the Volition computer. This user activity created certain records on the computer. From such user activity, it is possible to see that, at a minimum, the Toshiba USB Drive contains a folder titled "DRY VAN – FULL" that contains various files.[18]

---

[18] The term "dry van" refers to a type of truck/trailer used to ship freight.

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

65.     The second is a Hewlett Packard device (the "HP USB Device").  The event logs indicate that Jarvis connected this device to his Volition computer on January 11, 2022, and last removed it on January 13, 2022.  Again, although it is not possible to determine the exact content of the HP USB Device without access to the device itself, Jarvis' user activity on the Volition computer indicates that the HP USB Device contains folders entitled "Double Drop," "RGN," and "HAZMAT" all of which contain various files.[19]  Most concerning is the fact that the HP USB Device also contains a folder entitled "Nick's PC Backup" which suggests that it is a folder containing a backup of Jarvis' entire Volition computer.  Potentially confirming this suspicion is the fact that subfolders within the "Nick's PC Backup" folder include folders entitled "REEFER ALL" and "Bids – Truckload."[20]

66.     Volition was unable to find any evidence that Volition issued the Toshiba USB Device or the HP USB Device to Jarvis to use in the course and scope of his employment or that either device was owned by Volition.

67.     Based on the titles of the folders and the files contained in such folders, Volition believes that the files contained in the folders are Volition's proprietary lists of carriers by specialty.  The files could potentially contain information regarding the carrier, including contact information, shipping lanes, and pricing.  This information is especially sensitive as it is a compilation of data obtained by Volition over the entire course of its business with a specific carrier, is not readily accessible by the public, and is essential to servicing customers with shipping needs.  Having this information would allow Pinnacle to immediately begin using the carriers on the list to manage customer freight requests without having to

---

[19] Both double drop and RGN (removable gooseneck) are terms which refer to a type of truck/trailer used to ship freight.  Hazmat is a term short for hazardous materials and is a term which refers to a specific type of freight that is considered to be, or contains, hazardous materials.

[20] The term "reefer" refers to frozen freight and "truckload" can refer to shipments that are a full truckload of freight (as opposed to LTL which indicates that the freight is less than a full truckload).

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

independently identify carriers with the requisite shipping capabilities and without having to develop relationships with carriers to handle the actual shipping.

68.     The forensic investigation also confirmed that Jarvis was accessing personal cloud storage accounts on his Volition computer.  Like with the external storage devices, it is not possible to determine the exact content of the cloud storage accounts without direct access to such accounts.  However, Jarvis' user activity creates records which strongly suggest that the cloud storage accounts contain Volition information.  Most critically, this user activity indicates that Jarvis was using a personal Microsoft "OneDrive" account.  OneDrive is a software that allows users to sync their local files with a cloud account (meaning that the local file will automatically also appear in a cloud storage account so long as the computer has access to the internet).  Files stored in the OneDrive cloud account are then accessible from any computer with internet access.  Jarvis' user activity on the Volition computer indicates that Jarvis was syncing at least some of his local Volition files to a OneDrive account (including files in folders entitled "Desktop," "Documents," "templates," "Originals," "Bids – Truckload," "Agent," "Agent-Public," "Carrier Info Added," "Completed Excel Docs," "Email attachments," and "processed").

69.     There is also user activity that suggests Jarvis first began using the OneDrive to sync his Volition computer to a cloud account immediately prior to resigning.  On January 13, 2022 (the same day he was using the Toshiba and HP USB Drives), Jarvis accessed a file entitled "Getting started with OneDrive.pdf."

70.     There is also evidence from the internet history on Jarvis' Volition computer that Jarvis accessed the cloud storage sites "Dropbox" and "Box" which, similar to OneDrive, allow users to take local files and store electronic copies of such files in cloud storage sites accessible from any computer with internet access.

71.     Jarvis did not have a business reason to use OneDrive, Dropbox, or Box accounts in the course and scope of his employment with Volition.  Volition uses Google

21

Drive cloud storage.  Further, Jarvis provided Volition with login credentials for his Volition systems upon his resignation so that Volition could change the access credentials.  Jarvis did not provide Volition with login credentials for OneDrive, Dropbox, or Box accounts.

**2.     Tyler Harper**

72.     The forensic investigation also found suspicious activity on Harper's Volition computer.  Like Jarvis, the internet history on Harper's Volition computer indicates that Harper potentially accessed OneDrive, Dropbox, and Box cloud storage accounts.  However, unlike Jarvis, Harper's user activity did not contain sufficient markers to establish what files or folders Harper may have been interacting with in these accounts.

73.     In any case, Harper did not have a business reason to use OneDrive, Dropbox, or Box accounts in the course and scope of his employment with Volition.  Volition uses Google Drive cloud storage.

74.     The investigation also uncovered that Harper and Lamia conspired to misappropriate Volition's manner of handling freight shipments traveling between the United States and Mexico.  On December 20, 2021, Lamia reached out to Volition employee Josue Ornelas ("Ornelas") under the pretext of scheduling training for Harper regarding handling US/Mexico freight for the purpose of aiding Harper in performing his duties for Volition.  As the training had not been scheduled by January 11, 2022, Harper contacted Ornelas again and scheduled the training for January 12, 2022.  Harper then contacted Ornelas on January 21, 2022, for another discussion that afternoon.  This course of conduct strongly suggests that Harper specifically misappropriated this information regarding Volition's manner of handling US/Mexico freight shipments to aid him in the performance of his duties on behalf of Pinnacle.

**3.     Megan MacDonald**

75.     The forensic investigation also found suspicious activity on MacDonald's Volition computer.  Like Jarvis and Harper, the internet history on MacDonald's Volition

computer indicates that MacDonald potentially accessed OneDrive, Dropbox, and Box cloud storage accounts.  However, like Harper, MacDonald's user activity did not contain sufficient markers to establish what files or folders MacDonald may have been interacting with in these accounts.

76.    In any case, MacDonald did not have a business reason to use OneDrive, Dropbox, or Box accounts in the course and scope of her employment with Volition.  Volition uses Google Drive cloud storage.

### 4.    Vincent Lamia

77.    To date, Volition has not been able to conduct a forensic investigation of Lamia's Volition computer due to a delay in receiving login credentials from Lamia.  This forensic investigation should be completed soon.

78.    However, the investigation did uncover email communications from Lamia that were suspect.  On January 24, 2022, Lamia requested that a Volition client schedule a meeting with him on January 27 (the day following his resignation from Volition) to discuss business the client intended to provide to Volition.  This email communication strongly suggests that Lamia was specifically diverting the client's business from Volition to Pinnacle.

79.    On January 21, 2022, Lamia emailed one of Volition's carriers that had recently shifted a portion of its shipping capacity to ongoing shipping opportunities for Volition client Client B.  Lamia thanked the carrier for doing so and also for providing him with a contact list for the carrier.  Lamia promised to reach out in the "the next few weeks" to explore additional opportunities for business.  This email communication strongly suggests that Lamia used Volition's relationship with the carrier to obtain carrier information for his use at Pinnacle.

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## V. <u>CAUSES OF ACTION</u>

**A.    FIRST COUNT: TRADE SECRET MISAPPROPRIATION/CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS (DTSA) (ALL DEFENDANTS)**

80.    GTZ repeats and realleges all of the foregoing allegations contained in the Complaint as if set forth fully herein.

81.    As more fully described above, Volition developed, and GTZ now owns, Confidential Information including, but not limited to, customer information (including contact information, pricing, contract terms, renewal periods, volume of business, customer histories/needs/preferences), carrier information, pricing structures, methods of doing business, negotiation strategies, and revenue/profit/cost information, and specifically, the proprietary coding, process, and information contained in the Proprietary Logistics Tools. This information is protectable under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, as trade secrets.

82.    These trade secrets relate to products and services used in, and intended for use in, interstate commerce.

83.    Volition developed this trade secret information through extensive time, labor, skill, and money.

84.    Volition took reasonable steps to protect such trade secrets using physical, personnel, and electronic security protections, including as described above.

85.    Volition's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not readily ascertainable through proper means by another person, such as Defendants, who can obtain economic value from disclosure or use of the information.

86.    Volition's trade secrets have enabled it to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets.

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

87.    The Individual Defendants, acting in concert with each other, misappropriated and conspired to misappropriate, without Volition's authorization, Volition's trade secrets and have used/plan to use such trade secrets in connection with the operation of Pinnacle.

88.    Upon information and belief, the Individual Defendants procured Volition's trade secrets using improper means and implemented those trade secrets in the founding, client acquisition, and operations of their newly formed corporation, Pinnacle.

89.    Defendants' misappropriation of Volition's trade secrets has caused actual injury to GTZ by, among other things, destroying GTZ's exclusive ownership and use of the trade secret information as successor in interest to Volition, devaluing the trade secrets, and causing a loss of competitive advantage in the marketplace, loss of business, confusion of customers, and loss of goodwill. GTZ is entitled to damages compensating GTZ for actual damages caused by Defendants' misappropriation as well as unjust enrichment damages. 18 U.S.C. § 1836(b)(3).

90.    Defendants' willful and malicious misappropriation of GTZ's trade secrets entitles GTZ to an award of exemplary damages and attorneys' fees. 18 U.S.C. § 1836(b)(3).

91.    As a result of the Defendants' willful misappropriation of GTZ's trade secrets, GTZ has suffered and continues to suffer irreparable harm in the loss of the exclusive use of its trade secrets, loss of competitive advantages in the marketplace, damage to customer relationships, loss of customers in which it invested significant time, effort and money to develop, the loss of goodwill it has built with those customers, and the loss of the opportunity to continue doing business with those customers in the future.  Therefore, GTZ is entitled to injunctive relief to prevent irreparable harm. 18 U.S.C. § 1836(b)(3).

**B.    SECOND COUNT: TRADE SECRET MISAPPROPRIATION/CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS (THE ARIZONA UNIFORM TRADE SECRETS ACT (AUTSA) (ALL DEFENDANTS)**

92.    GTZ repeats and realleges all of the foregoing allegations contained in the Complaint as if set forth fully herein.

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

93.     As more fully described above, Volition developed and GTZ now owns Confidential Information including, but not limited to, customer information (including contact information, pricing, contract terms, renewal periods, volume of business, customer histories/needs/preferences), carrier information, pricing structures, methods of doing business, negotiation strategies, and revenue/profit/cost information.  This information is protectable under the Arizona Uniform Trade Secrets Act, ARS. § 44-4401, *et seq*. as trade secrets.

94.     Volition developed this trade secret information through extensive time, labor, skill, and money.

95.     Volition took reasonable steps to protect such trade secrets using physical, personnel, and electronic security protections, including as described above.

96.     Volition's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not readily ascertainable through proper means by, another person (such as the Individual Defendants or Pinnacle) who can obtain economic value from the disclosure or use of the information.

97.     GTZ's trade secrets have enabled it to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets.

98.     Defendants, individually and acting in concert, misappropriated and conspired to misappropriate, without GTZ's authorization, GTZ's trade secrets and have used/plan to use such trade secrets in connection with the operation of Pinnacle.

99.     Upon information and belief, the Individual Defendants, acting in concert, procured GTZ's trade secrets using improper means and are in a position to use GTZ's trade secrets in the operations of Pinnacle, a direct competitor, and/or disclose such trade secrets to Pinnacle.

100.     Defendants' misappropriation of GTZ's trade secrets has caused actual injury to GTZ by, among other things, destroying GTZ's exclusive ownership and use of the trade

secret information, devaluing the trade secret, and causing a loss of competitive advantage in the marketplace, loss of business, confusion of customers, straining customer relationships, and loss of goodwill.  GTZ is entitled to damages compensating GTZ for actual damages caused by Defendants' misappropriation as well as unjust enrichment damages.  A.R.S. §44-403(a).

101.    Defendants willful and malicious misappropriation of GTZ's trade secrets entitles GTZ to an award of exemplary damages and attorneys' fees.  A.R.S. § 44-403(B); § 44-404.

102.    As a result of the Defendants' willful misappropriation of GTZ's trade secrets, GTZ has suffered and continues to suffer irreparable harm in the loss of the exclusive use of its trade secrets, loss of competitive advantages in the marketplace, damage to customer relationships, loss of customers in which it invested considerable time, effort, and money to develop, the loss of goodwill it has built with those customers, and the loss of business with those customers in the future.  Therefore, GTZ is entitled to injunctive relief to prevent irreparable harm.  A.R.S. § 44-402.

**C.    THIRD COUNT: COMMON LAW MISAPPROPRIATION OF CONFIDENTIAL INFORMATION (ALL DEFENDANTS)**

103.    GTZ repeats and alleges all of the foregoing allegations contained in the Complaint as if set forth fully herein.

104.    As more fully described above, Volition developed and GTZ now owns confidential business information including, but not limited to, its customer information, pricing structures, carrier/vendor information, methods of doing business, negotiation strategies, and revenue/profit/cost information.  This information is protectable under Arizona law as confidential business information.

105.    GTZ acquired all right, title, and interest in Volition's assets in the Asset Sale.

106.    Volition developed this confidential business information through extensive time, labor, skill, and money.

107.    Volition took reasonable steps to protect its confidential business information using physical, personnel, and electronic security protections.

108.    The confidential business information, now owned by GTZ, has enabled GTZ to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its confidential business information.

109.    At all times, the Individual Defendants were bound by the terms of the NDA.

110.    Through the NDA, the Individual Defendants agreed that during their employment with Volition and for 24 months thereafter, that they would not "use or disclose Confidential Information for their own personal benefit or the benefit of any other person, corporation, or entity" other than Volition.

111.    Per the terms of the NDA, Volition can assign the NDA to successors, subsidiaries, assigns, and legal entities controlling or controlled by Volition.

112.    GTZ is the equitable assignee of the NDA.

113.    Upon information and belief, the Individual Defendants misappropriated, without GTZ's consent, GTZ's Confidential Information during their employment with Volition and are in a position to use such trade secrets in connection with the founding and operation of Pinnacle.

114.    Defendants' misappropriation of GTZ's Confidential Information has caused actual injury to GTZ by, among other things, destroying GTZ's exclusive ownership and use of the confidential business information, by devaluing the information, and by causing a loss of competitive advantage in the marketplace, loss of business, confusion of customers, and loss of goodwill.  GTZ is entitled to damages compensating GTZ for actual damages caused by Defendants' misappropriation.

115.    Defendants' actions in misappropriating GTZ's confidential business information were willful and malicious, entitling GTZ to exemplary damages.

116.    The harm to GTZ cannot be adequately remedied by monetary damages.  GTZ is entitled to injunctive relief to enjoin Defendants' use and/or disclosure of GTZ's confidential business information and any threatened misappropriation of GTZ's confidential information.  GTZ is further entitled to injunctive relief to instruct Defendants to return GTZ's confidential business information and destroy any access they have to GTZ's confidential business information.

**D.    FOURTH COUNT: BREACH OF CONTRACT (THE INDIVIDUAL DEFENDANTS)**

117.    GTZ repeats and realleges all of the foregoing allegations contained in the Complaint as if set forth fully herein.

118.    At all times, the Individual Defendants were bound by the terms of the NDA.

119.    Per the terms of the NDA, Volition can assign the NDA to successors, subsidiaries, assigns, and legal entities controlling or controlled by Volition.

120.    GTZ is the equitable assignee of the NDA.

121.    The NDA prohibits the misappropriation and unauthorized use or disclosure of GTZ's Confidential Information as defined by the NDA.

122.    Through the NDA, the Individual Defendants agreed that during their employment with Volition and for 24 months thereafter, they would not "use or disclose Confidential Information for their own personal benefit or the benefit of any other person, corporation, or entity" other than Volition.

123.    Per the terms of the NDA, the terms of the NDA are binding upon the successors, subsidiaries, assigns, and legal entities controlling or controlled by the Individual Defendants.

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

124.    The Individual Defendants breached the NDA by misappropriating Confidential Information belonging to GTZ and continuing to use GTZ's Confidential Information in the founding and operation of Pinnacle.

125.    As a direct and proximate result of the Individual Defendants' breaches, GTZ has suffered damages and continues to suffer irreparable harm in the form of the loss of the benefits of its bargains, loss of the exclusive use of its Confidential Information, loss of its competitive advantages in the marketplace, damage to customer relationships, loss of business opportunities, and loss of goodwill and monetary damages in an amount to be determined.

126.    Absent an injunction to prevent the Individual Defendants and Pinnacle from continuing to use, disseminate, reveal and/or divulge GTZ's Confidential Information, GTZ will continue to be irreparably injured.  GTZ has no meaningful remedy at law for these irreparable injuries.

127.    Therefore, GTZ is entitled to injunctive relief to prevent irreparable harm, as well as damages, attorneys' fees, and costs of suit.[21]

**E.    FIFTH COUNT: UNLAWFUL INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS (ALL DEFENDANTS)**

128.    GTZ repeats and alleges all of the foregoing allegations contained in the Complaint as if fully set forth herein.

129.    Defendants engaged in unfair conduct when they utilized GTZ's Confidential Information to compete with GTZ and wrongfully interfere with the ongoing customer contractual and business relationships it established through years of hard work and expense.

130.    As a result of Defendants' unlawful interference with GTZ's contractual and business relationships, GTZ has suffered and continues to suffer damages.

---

[21] *See* Exhibit A1-A4, Article IX, ¶ C (entitling Volition to seek injunctive relief for breach of contract); Exhibit A1-A4, Article X: Prevailing Party ("In a dispute arising out of or in relation to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees, costs and necessary expenditures.").

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

131.    The Defendants have intentionally and maliciously interfered with the contractual and business relationships between GTZ and its customers by misappropriating GTZ's Confidential Information and diverting GTZ's customers in a manner that is not transparent and not accurately disclosing the fact that Pinnacle and Volition/GTZ are not related and are in fact competitive entities.

132.    Defendants' conduct went and continues to go beyond generally accepted standards of morality, professionalism, and socially acceptable conduct and runs counter to Arizona public policy.

133.    Absent an injunction to prevent the Individual Defendants and Pinnacle from continuing to tortiously interfere with GTZ's contractual and business relationships with its customers, GTZ will be irreparably injured. GTZ has no meaningful remedy at law for these irreparable injuries.

134.    Therefore, GTZ is entitled to injunctive relief to prevent irreparable harm, as well as compensatory and punitive damages, attorneys' fees, and costs of suit.

**F.    Sixth Count: Aiding and Abetting Tortious Conduct (All Defendants)**

135.    GTZ repeats and realleges all of the foregoing allegations contained in the Complaint as if set forth fully herein.

136.    As more fully described above Volition developed, and GTZ now owns, confidential business information including, but not limited to, its customer information, pricing, structures, carrier/vendor information, methods of doing business, negotiation strategies, and customer revenue/profit/and cost information. This information is protectable under Arizona Uniform Trade Secrets Act, ARS. § 44-401, et seq. as trade secrets.

137.    Volition developed this confidential business information through extensive time, labor, skill, and money.

138.    Volition took reasonable steps to protect such trade secrets using physical, personal, and electronic security protections, including as described above.

31

PETTI AND BRIONES, PLLC
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

139.    GTZ acquired all right, title, and interest to Volition's asset in the Asset Sale, and therefore, the trade secrets at issue are now owned by GTZ.

140.    GTZ's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not readily ascertainable through proper means by, another person (such as the Individual Defendants or Pinnacle) who can obtain economic value from the disclosure or use of the information.

141.    GTZ's trade secrets have enabled it to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets.

142.    As state herein, *supra*, upon information and belief, Pinnacle, Harper, Lamia, and MacDonald acted in concert with Jarvis, who was integral to the development of, and had unfettered access to, GTZ's Confidential Information, to misappropriate GTZ's trade secrets.

143.    At all times the Individual Defendants were subject to the NDA and knew that the misappropriation of GTZ's Confidential Information was a breach of their duty to Volition (now GTZ).

144.    Additionally, the Individual Defendants substantially assisted and encouraged the misappropriation for the benefit of themselves and Pinnacle.

145.    Accordingly, because Pinnacle, Harper, Lamia, and MacDonald aided and abetted Jarvis in willfully misappropriating GTZ's trade secrets in violation of A.R.S § 44-4401, *et seq*., GTZ has suffered and continues to suffer economic and non-economic damages and irreparable harm in the loss of the exclusive use of its trade secrets, loss of competitive advantages in the marketplace, damage to customer relationships, loss of customers in which it invested significant time, effort and money to develop, the loss of goodwill it has built with those customers, and the loss of business with those customers in the future.

146.    Therefore, GTZ is entitled to a judgment against all Defendants jointly and severally.

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

# VI.  **CONCLUSION**

WHEREFORE, GTZ respectfully requests the following relief:

a.      Injunctive relief permanently enjoining and restraining, and pending the final determination of this cause, preliminarily enjoining and restraining (through temporary restraining order and preliminary injunction) Defendants and all persons and organizations allied or associated with, or acting or working in concert or combination with them, from:

       i.      Possessing or retaining any Volition/GTZ property, Confidential Information of Volition/GTZ, and/or documents (and copies thereof), whether in physical or digital format, containing Confidential Information;

      ii.     Disclosing any Volition/GTZ Confidential Information to anyone, except as expressly authorized by this Court;

     iii.    Using any Volition/GTZ Confidential Information for any purpose not expressly authorized by this Court, including but not limited to using any Volition/GTZ Confidential Information to aid in the solicitation of business from customers and/or the provision of services to customers;

     iv.     Misappropriating any Volition/GTZ Confidential Information; and

     v.      Assisting or aiding any third party in any manner to do any of the above.

b.      A temporary restraining order requiring Defendants to:

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

i.     Preserve all evidence that may be discoverable in this case, expressly including but not limited to evidence contained on USB/thumb drives, in cloud storage folders (*e.g.*, Google Drive, OneDrive, or DropBox), personal computers, tablets, mobile phones, social media accounts, or other means of physical or electronic information storage;

ii.    Return to GTZ all Volition/GTZ property in their possession, custody, or control within 3 business days;

iii.   Return to GTZ all Confidential Information of Volition/GTZ, and/or documents (and copies thereof), whether in physical or digital format, containing Confidential Information that are in their possession, custody, or control within 3 business days; and

iv.    After complying with the obligation to return information to GTZ as stated above, permanently disable all remaining access they have to any Volition/GTZ property or documents (including copies thereof) containing Volition/GTZ Confidential Information, or documents duplicated or derived from Volition/GTZ's Confidential Information, within 3 business days.

c.     Disgorgement that requires Defendants and all persons and organizations allied or associated with or acting or working in concert or combination with them to pay GTZ all of the monies they received or will receive as a result of their unlawful misappropriation of GTZ's Confidential Information and unlawful solicitation and poaching of GTZ's customers and prospective customers and other unlawful conduct.

d.     "Head start" damages related to the time and money Defendants saved by using GTZ's Confidential Information as a short cut to taking its services to market.

e.     A reasonable licensing fee for the use of any and all Proprietary Logistics Tools developed by Volition or owned by GTZ.

f.     Compensatory and exemplary/punitive damages, attorneys' fees, and costs of suit.

g.     All such other and further relief as GTZ shows itself to be justly entitled.

34

DATED this 5th day of April, 2022.

                                  PETTI AND BRIONES, PLLC


                                  By /s/ Frederick R. Petti
                                       Frederick R. Petti
                                       Patricia Lane Briones
                                       Joseph T. Hourigan

                                  T. Gregory Jackson (TX Bar No. 24004718)
                                  John M. Farrell (TX Bar No. 24059735)
                                  *(Applications for Pro Hac Vice Forthcoming)*
                                  ARCADI JACKSON, LLP
                                  2911 Turtle Creek Boulevard, Suite 800
                                  Dallas, TX  75219

                                  Attorneys for Plaintiff
                                  GlobalTranz Enterprises LLC

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

## VERIFICATION

I, Tim Hilliard, am the Director of Operations for Plaintiff GlobalTranz Enterprises LLC's subsidiary Volition Logistics. I hereby verify that the claims and/or statements made in Paragraphs 12-18, 24, 26-30, 35-59, 61, 67, 74, and 78-79 as well as any footnotes associated with such paragraphs and footnotes 18-20 of the foregoing Verified Complaint are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: April 4, 2022

By: _____
         Tim Hilliard

## <u>VERIFICATION</u>

I, Kelsey Charron, am the HR & Office Manager of Plaintiff GlobalTranz Enterprises, LLC's subsidiary Volition Logistics. I hereby verify that the claims and/or statements made in Paragraphs 19-23, 25, 31-34, 60-61, 66, 71, 73, and 76 as well as footnotes associated with such paragraphs of the foregoing Verified Complaint are true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: April 4, 2022                    By: _____
                                            Kelsey Charron

## <u>VERIFICATION</u>

I, Daniel Conners, am a Senior Forensic Examiner of CS Disco, Inc., consultant to Plaintiff GlobalTranz Enterprises LLC.   I hereby verify that the claims and/or statements made in Paragraphs 62-65 (not including the footnotes associated with such paragraphs), 68-70, 72, 75, and 77 of the foregoing Verified Complaint are true.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: April 4, 2022                                   By: _____

                                                                  Daniel Conners

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PETTI AND BRIONES, PLLC**
8160 EAST BUTHERUS DRIVE, SUITE 1
SCOTTSDALE, ARIZONA 85260
Telephone (602) 396-4890

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2022, I electronically transmitted the attached

document entitled Plaintiff GlobalTranz Enterprises, LLC's Verified Complaint for Injunctive

Relief and Damages to the Clerk's Office using the CM/ECF System for filing and served all

counsel of record by email through the Court's CM/ECF system.

/s/ Sherry Samford