WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Globaltranz Enterprises LLC,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Logistics Group LLC, et al.,<br><br>Defendants. | No. CV-22-00545-PHX-JAT<br><br>**ORDER** |

Before the Court is Plaintiff GlobalTranz Enterprises, LLC's opposed motion for a protective order. (Doc. 46). The motion is fully briefed. (*See* Docs. 47; 48). The Court now rules.

**I.   BACKGROUND**

This litigation arises from events following Plaintiff's purchase of Volition Logistics, LLC.[1] Volition Logistics was in the business of arranging transportation for truckload-or-smaller shipments of various kinds of goods. (*See* Docs. 29 at 4–5; 40 at 2–3; 46 at 28–29). Essentially, as a third-party-logistics provider Volition contracted with carriers to move goods on behalf of customers who needed goods moved. (*See id.*). Plaintiff alleges that former Volition employees used trade secrets and other confidential information belonging to Plaintiff to "jump start" a competing business, Pinnacle Logistics Group, LLC. (Doc. 29 at 2). Plaintiff claims that Defendants have, among other things,

---

[1] (Docs. 29 at 2, 4, 14–15; 40 at 2–3, 1–11). Although Plaintiff has filed a Second Amended Complaint, (Doc. 52), references are to Plaintiff's first Amended Complaint, as the changes in the Second Amended Complaint are minor and not relevant to the facts set forth here, (*See* Doc. 49 at 2–3), and Defendants have not yet answered it.

violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* The parties have twice jointly moved for a protective order. (Docs. 22; 30). The Court denied each motion without prejudice. (Docs. 27; 34). The first such motion was denied because the parties' profession of belief that the proposed protective order ("PPO") would "accomplish their goal of maintain[ing] the confidentiality of certain confidential, proprietary, and/or sensitive or personal information" did not demonstrate good cause to grant the order. (Doc. 27 at 2). The second such motion was denied because it too dealt "in broad generalities and not specifics" and consequently did not explain with sufficient particularity why the information covered by the proposed order was entitled to protection. (Doc. 34 at 2–3). At the Rule 16 scheduling conference on July 13, 2022 the Court instructed the parties that, to obtain a protective order, the party seeking protection must either make a particularized showing of good cause for each individual document or identify specific categories of documents, showing that each category deserves protection by describing the consequences if that category is not protected.

## II.    LEGAL STANDARD

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (citations omitted). But Federal Rule of Civil Procedure 26(c)(1) permits district courts, upon motion by a person from whom discovery is sought, and for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1), (G). This Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). By the Rule's terms this "broad latitude to grant protective orders" extends not only to true trade secrets, nor even only to confidential commercial information, but well beyond. *See Phillips ex. rel. Estates of Byrd v. Gen. Motors Corp.*,

307 F.3d 1206, 1211 (9th Cir. 2002); 8A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2043, at 242–43 (4th ed. 2010) (citations omitted).

### III. ANALYSIS

Plaintiff argues that its motion for a protective order should be granted because it has shown good cause why certain limited categories of information should be protected by explaining the consequences of not protecting said information and supporting that explanation with corroborating declarations. Defendants argue that the motion should be denied because the PPO does not follow the Court's previous instructions, does not clearly define what information is to be protected, and does not adequately state why that information needs protection.

### a. Opposed Umbrella Protective Order

The species of protective order sought here is an "umbrella" or "blanket" protective order, which creates a framework in which producing parties may designate information divulged during discovery as confidential, subject to challenge by other parties or persons and eventual resolution of such challenges by the trial court. *See* 8A Wright & Miller, *supra*, § 2035, at 145–46 (citations omitted). Umbrella protective orders delay the requirement to show good cause with respect to individual documents until the designation of that document as confidential is challenged. *Rocky Mountain Bank v. Google, Inc.*, 428 Fed. App'x 690, 691 (9th Cir. 2011) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)) (explaining that *Foltz* held that "where [a] blanket protective order [is] issued, an actual showing of good cause must be made if another seeks access to the document."); *see also Chi. Trib. Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1307 (11th Cir. 2001). Such orders "routinely are approved by courts in civil cases." *Van v. Wal-Mart Stores, Inc.*, No. C 08–5296, 2011 WL 62499, at *2 (N.D. Cal. Jan. 7, 2011); *see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co. Ltd.*, 529 F. Supp. 866, 889 (E.D. Pa. 1981).

Before such orders may be granted however, the movant must make a preliminary showing of good cause, which requires limiting the scope of the protective order to well-

defined categories for which the existence of good cause can be determined. *Compare* Protective Order at 1–2, *IceMOS Tech. Corp. v. Omron Corp.*, No. CV 17-02575-PHX-JAT (D. Ariz. Dec. 20, 2018) (Doc. 87) (granting a protective order limited to two categories); *with Rose v. Dignity Health*, No. CV-21-00775-PHX-JAT, 2021 WL 5084277, at *1–3 (D. Ariz. Nov. 2, 2021) (denying a requested protective order where the parties did not indicate whether a list of categories was "the universe of what they intend[ed] to mark confidential"); *see also Gann v. Gen. Motors LLC*, No. CV-22-00080-TUC-RM, 2022 WL 3552484, at *3–4 (D. Ariz. Aug. 18, 2022). Umbrella protective orders are typically entered upon joint request of the parties, but "the agreement of all parties is not required so long as certain conditions are met." *Satmodo, LLC v. Whenever Commc'ns, LLC*, No.: 3:17-cv-192, 2018 WL 1071707 (S.D. Cal. Feb. 27, 2018) (quoting *Van*, 2011 WL 62499, at *2). To obtain an umbrella protective order without stipulation, in addition to the preliminary showing of good cause the order must provide that the parties will only designate information as confidential in good faith, and the burden of showing good cause as to any particular document must remain with the party seeking protection. *Parkway Gallery Furniture, LLC v. Kittinger/Pennsylvania House Grp. Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988) (citing *Cipollone v. Liggett Grp., LLC*, 785 F.2d 1108 (3d Cir. 1986)).

        The umbrella protective order proposed here satisfies these additional requirements. First, under the proposed order, a person may designate materials "Confidential" or "Attorney's Eyes Only" only when the person has a "good faith belief" that the requirements for such a designation are met. (Doc. 46-1 at 3). Second, the proposed order provides that "[a]t any stage of these proceedings, any party may object to a designation of confidentiality," and sets out procedures by which challenges will be resolved, culminating in a Court decision if necessary. (*Id.* at 7–11). Thus, the proposed order does not shift the burden of showing good cause away from the party seeking protection. Instead, "only the burden of raising the issue with respect to certain documents would shift to the other party." *Cipollone*, 785 F.2d at 1122. The proposed order will therefore be granted if Plaintiff has made a threshold showing of good cause with respect to each category of information it

seeks to protect.

   **b. Good Cause**

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210–11 (citations omitted). To meet this burden, a party should substantiate allegations of harm with "specific examples or articulated reasoning," supported "where possible by affidavits." *Foltz*, 331 F.3d at 1130–31 (first quoting *Beckman Indus, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); then quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987)). Plaintiff seeks protection for seventeen categories of "non-public confidential, proprietary, and/or trade secret information."[2] Defendants argue that Plaintiff has not made a particularized showing of good cause for these categories, and instead has offered only conclusory statements and has failed to show specific prejudice or harm. (Doc. 47 at 8).

The Court finds that Plaintiff has made the showing of good cause required for entry of an umbrella protective order with respect to sixteen of the seventeen categories. Plaintiff contends that some of the categories contain "information regarding customers," disclosure of which "would allow a competitor to immediately identify potential revenue targets, develop a solicitation plan for the customers, divert customer business, [and] . . . undercut [GlobalTranz]/Volition pricing." (Doc. 46 at 12). It contends that other categories contain "information regarding carriers," disclosure of which "would allow a competitor to immediately identify carriers with the capabilities to move freight for customers, . . . [and] negotiate pricing arrangements with such carriers," which "could in turn . . . limit the

---

[2] (Doc. 46 at 9). The specific categories are: (1) information regarding current product/service offerings; (2) pricing and discount information; (3) sales and marketing plans; (4) carrier/vendor lists, contact information, and contract information; (5) carrier/vendor capabilities and information regarding its current and historical business relationships with carrier/vendors; (6) negotiation strategies; (7) lead lists and contact information; (8) customer lists and contact information; (9) customer contracts; (10) other customer information, including shipping histories, needs, and preferences; (11) revenue, profit, and cost information; (12) business plans and development strategies; 13) analytics and reporting information; (14) information regarding future business opportunities and product/service offerings; (15) sales/customer relations training/mentorship programs; (16) proprietary tools used by Volition in booking freight for its customers; and (17) business transactions. (Doc. 46-1 at 2–3).

- 5 -

carrier's . . . willingness to handle shipments for" Plaintiff "if the competitor's arrangement was more favorable to the carrier." (*Id.*). It further contends that knowledge of Plaintiff's proprietary booking tools would allow competitors to use these tools in competing against it, and that knowledge of Plaintiff's business transactions would allow potential partners the upper hand in entering agreements with Plaintiff. (*Id.* at 12–13). It supports these contentions with declarations by Plaintiff's Director of Operations and by a subject-matter expert with 30 years of relevant experience in supply chain management. (*Id.* at 18–36). These declarants give a specific example of how a competitor could use the type of non-public information Plaintiff seeks to protect to undercut Plaintiff and win business away from it. (*See id.* at 22–23, 34).

Notwithstanding this showing, however, Plaintiff has not adequately explained why the first category, "information regarding current product/service offerings" should be protected. This first category appears to refer to products and services offered by or to Plaintiff's customers, rather than products and services offered by or to carriers with whom Plaintiff contracts. (*See* Doc. 46 at 12). It seems that such information would typically be publicly available, as entities engaged in commerce generally advertise products and services to potential customers to generate business. On Plaintiff's showing the Court cannot guess why current products and services offered by or to customers would be confidential information whose disclosure could harm Plaintiff. Plaintiff has therefore failed to show good cause why this category should be protected.

Otherwise, Plaintiff paints a detailed picture of a highly competitive industry in which information regarding customers, carriers, and agency relationships with larger companies (including information in the remaining sixteen categories) is highly guarded and can, if discovered, quickly be used to gain an edge against competitors. Defendants do not contradict this account, and the Court has no reason to discredit it. Although Defendants argue that the motion should be denied, they do not explain why in their view Plaintiff's articulated reasoning supported by declarations and specific examples of specific harm is insufficient as a preliminary showing of good cause to enter an umbrella protective order.

(*See* Doc. 47 at 8, 12–13). Plaintiff's motion will therefore be granted, but the Court will excise the first category, "information regarding current product/service offerings" from its protective order.

Defendants argue that the PPO's scope is too broad, citing previous orders entered by this Court which they interpret as narrower. (Doc. 47 at 5) (citing Protective Order, *BBK Tobacco & Foods, LLP v. Skunk, Inc.*, No. CV-18-02332-PHX-JAT (D. Ariz. Dec. 12, 2019) (Doc. 136); Protective Order, *Honeywell Int'l Inc. v. Forged Metals, Inc.*, No. CV-19-03730-PHX-JAT (D. Ariz. May 13, 2020) (Doc. 37)). The protective order in *BBK Tobacco*, limited as it was to four specific categories of trade secrets, was indeed narrower than the PPO here. *See* Protective Order, *BBK Tobacco*, *supra*, at 2. But the Court has approved other protective orders which contained relatively broad categories that encompass the more specific categories listed in the PPO here, and which were therefore not appreciably narrower. In the *Honeywell* protective order, for example, "confidential information" included "research, technical, commercial or financial information that one of the parties has maintained as confidential." Protective Order, *Honeywell*, *supra*, at 2. Similarly, the protective order in *IceMOS Technology Corporation v. Omron Corporation* included as confidential information "sensitive information . . . that [a] party has utilized or intends to utilize to maintain a competitive advantage and, if disclosed, could negatively impact the party commercially or competitively." Protective Order, *IceMOS*, *supra*, at 2. Here the PPO's scope is roughly similar to that of the protective orders in *IceMOS* and *Honeywell*, including as "confidential information" specific categories of business-related "non-public documents" disclosure of which "could be harmful to the business or operations of such party or to another party or non-party." (*See* Doc. 46-1 at 2–3). The categories listed in the PPO are therefore both within the bounds this Court has placed on umbrella protective orders in the past, and consistent with the Court's directions to the parties at the July 13, 2022 scheduling conference. However, in the interest of clarity the Court's protective order will more plainly reflect Plaintiff's statement that it seeks protection only for documents in the listed categories that are of "of a 'non-public

confidential, proprietary, and/or trade secret' nature." (Doc. 48 at 11).

Defendants also intimate that the PPO should not be granted because Plaintiff has not demonstrated that the information within each category would qualify as a trade secret. (*See* Doc. 47 at 4, 6–8, 10). But, as discussed, protective orders extend to more than trade secrets: the list of potential orders in Rule 26(c)(1) encompasses not only trade secrets but also other discoverable information that could cause "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1); *Phillips*, 307 F.3d at 1210–12, 1214 (holding that a district court erred in denying a protective order solely because the materials at issue were not trade secrets). In noting in its prior orders that the parties had not shown that any information was a trade secret, the Court intended only to note the parties' failure to make one kind of showing that would have brought the information within the scope of 26(c)(1), not to imply that this was the only such showing possible. (*See* Docs. 27 at 2; 34 at 2–3).

Defendants further argue that the PPO is insufficiently flexible and would hamper discovery in part by preventing deponents from being questioned about information they or their employers were involved in generating if that information has been designated confidential under the proposed order. (*Id.* at 3). But the principal purpose of protective orders is not to ease litigation but rather to protect litigants from unnecessary damage. *See Rhinehart*, 467 U.S. at 34–36 ("Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c).") Moreover, umbrella protective orders expedite litigation only as compared to "document-by-document adjudication." *See* Annotated Manual for Complex Litigation § 11.432 (4th ed. 2022). It is therefore no argument against granting such an order that it might impede pretrial investigation compared to a hypothetical scenario in which protective orders were neither sought nor granted. Further, the PPO allows parties to challenge a "confidential" designation when it is made or to afterward seek permission from the producing party to disclose confidential information to persons not explicitly contemplated by the PPO, so that it appears unlikely that confidential

documents needed for depositions will not be permitted to be so used. (*See* Doc. 46-1 at 5, 7–8). Nevertheless, the Court finds that the confidentiality measures proposed, even with the above exceptions, go further than the circumstances warrant and its protective order will therefore permit use of information designated "Confidential" to the extent reasonably necessary to conduct depositions, and will clarify the requirements for marking information "Attorney's Eyes Only."

The balance of Defendants' arguments focus on the PPO's precise composition and the quality of its drafting. (*See* Doc. 47). For example, Defendants pose a series of questions regarding specific terms of the PPO, the collective effect of which is to advance the view that the PPO is excessively vague. (*See id.* at 6–9). These arguments do not address whether Plaintiff has shown good cause for a protective order to be entered, and therefore are not relevant to whether the motion should be granted. The Court will therefore consider criticisms in this vein as recommendations for molding its protective order to the contours of the case rather than as reasons to deny Plaintiff's motion, and will in its discretion consider them in fashioning its order to the degree it finds them pertinent and persuasive.[3]

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for a protective order (Doc. 46) is granted in part and denied in part as set out above. The Court will enter the proposed protective order with modifications.

Dated this 30th day of September, 2022.

James A. Teilborg
Senior United States District Judge

---

[3] The Court notes that any party may move to modify this protective order, provided that good cause for the desired modification is shown. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992)).